Steven J. Kahn (CA Bar No. 76933)
Gail S. Greenwood (CA Bar No. 169939)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California  90067
Telephone: 310/277-6910
Facsimile:  310/201-0760
E-mail:  skahn@pszjlaw.com
          ggreenwood@pszjlaw.com

Co-Counsel to Chapter 11 Debtors and
Debtors in Possession

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| | |
|---|---|
| In re | Lead Case No. 2:18-bk-20151-ER |
| VERITY HEALTH SYSTEM OF CALIFORNIA, INC., *et al.*, | Jointly administered with:<br>Case No. 2:18-bk-20162-ER;<br>Case No. 2:18-bk-20163-ER;<br>Case No. 2:18-bk-20164-ER; |
| Debtors and Debtors in Possession. | Case No. 2:18-bk-20165-ER;<br>Case No. 2:18-bk-20167-ER; |
| ☐ Affects All Debtors<br>☐ Affects Verity Health System of California, Inc.<br>☒ Affects O'Connor Hospital<br>☒ Affects Saint Louise Regional Hospital<br>☐ Affects St. Francis Medical Center<br>☒ Affects St. Vincent Medical Center<br>☒ Affects Seton Medical Center<br>☐ Affects O'Connor Hospital Foundation<br>☐ Affects Saint Louise Regional Hospital Foundation<br>☐ Affects St. Francis Medical Center of Lynwood<br>    Foundation<br>☐ Affects St. Vincent Foundation<br>☐ Affects St. Vincent Dialysis Center, Inc.<br>☐ Affects Seton Medical Center Foundation<br>☐ Affects Verity Business Services<br>☐ Affects Verity Medical Foundation<br>☐ Affects Verity Holdings, LLC<br>☐ Affects De Paul Ventures, LLC<br>☐ Affects De Paul Ventures - San Jose Dialysis, LLC | Case No. 2:18-bk-20168-ER;<br>Case No. 2:18-bk-20169-ER;<br>Case No. 2:18-bk-20171-ER;<br>Case No. 2:18-bk-20172-ER;<br>Case No. 2:18-bk-20173-ER;<br>Case No. 2:18-bk-20175-ER;<br>Case No. 2:18-bk-20176-ER;<br>Case No. 2:18-bk-20178-ER;<br>Case No. 2:18-bk-20179-ER;<br>Case No. 2:18-bk-20180-ER;<br>Case No. 2:18-bk-20181-ER;<br><br>Chapter 11 Cases<br><br>Hon. Ernest M. Robles<br><br>Adversary No. _____<br><br>**COMPLAINT FOR BREACH OF WRITTEN CONTRACTS, TURNOVER, UNJUST ENRICHMENT, AND DAMAGES FOR VIOLATION OF THE AUTOMATIC STAY** |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ST. VINCENT MEDICAL CENTER, a California
nonprofit public benefit corporation, SETON
MEDICAL CENTER, a California nonprofit public
benefit corporation, O'CONNOR HOSPITAL, a
California nonprofit benefit corporation, and
SAINT LOUISE REGIONAL HOSPITAL, a
California nonprofit public benefit corporation,

                Plaintiffs,

v.

BLUE SHIELD OF CALIFORNIA PROMISE
HEALTH PLAN f/k/a CARE 1ST HEALTH
PLAN, a California corporation,

                Defendant.

St. Vincent Medical Center, Seton Medical Center, O'Connor Hospital, and Saint Louise

Regional Hospital (collectively, "Plaintiffs") complain as follows:

## JURISDICTION AND VENUE

1.     The Bankruptcy Court has jurisdiction over this adversary proceeding (the "Action")

pursuant to 28 U.S.C. §§ 157 and 1334.

2.     The Action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3.     Venue is proper in this court pursuant to 28 U.S.C. § 1409 because the Action arises

in, and is related to, the above-captioned Chapter 11 cases pending in the United States Bankruptcy

Court for the Central District of California, Los Angeles Division.

4.     Plaintiff consents to the entry of final orders or judgments by the Bankruptcy Court

even it if is determined that, absent consent of the parties, the Bankruptcy Court cannot enter final

orders or judgments in the Action.

## THE PARTIES

5.     At all relevant times herein, Plaintiff St. Vincent Medical Center ("St. Vincent") was

a California nonprofit public benefit corporation doing business in the County of Los Angeles

providing hospital and ancillary medical services on an inpatient and outpatient basis.

6.     At all relevant times herein, Plaintiff Seton Medical Center ("Seton") was a

California nonprofit public benefit corporation doing business in the County of San Mateo providing

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

hospital and ancillary medical services on an inpatient and outpatient basis.  Seton operates two

hospital facilities, one in Daly City and one in Moss Beach, under a consolidated acute care license.

7.      At all relevant times herein, Plaintiff O'Connor Hospital ("O'Connor") was a

California nonprofit public benefit corporation doing business in the County of Santa Clara

providing hospital and ancillary medical services on an inpatient and outpatient basis.

8.      At all relevant times herein, Plaintiff Saint Louise Regional Hospital ("Saint Louise")

was a California nonprofit public benefit corporation doing business in the County of Santa Clara

providing hospital and ancillary medical services on an inpatient and outpatient basis.

9.      Defendant Blue Shield of California Promise Heath Plan, formerly known as Care 1st

Health Plan ("Care 1st" or "Defendant"), is a California corporation that, on information and belief,

offers regulated health insurance plans in California.  Care 1st provides health insurance for its

enrolled members under contractual arrangements with hospitals, physicians, and other medical care

providers.

## **BACKGROUND**

10.     On August 31, 2018 ("Petition Date"), each of the above-captioned debtors (each a

"Debtor" and collectively the "Debtors") filed a voluntary petition for relief under chapter 11 of title

11 of the United States Code (the "Bankruptcy Code").[1]  The cases are currently being jointly

administered before the Bankruptcy Court [Docket No. 17].  Since the commencement of these

cases, the Debtors have been operating their businesses as debtors in possession pursuant to §§ 1107

and 1108 of the Bankruptcy Code.

11.     Defendant had actual notice of the bankruptcy filings by the Debtors and of the

imposition of the automatic stay pursuant to, among other notifications, the *Notice of Case

Commencement of Chapter 11 Cases and Meeting of Creditors Pursuant to Section 341 of the

Bankruptcy Code* [Docket No.185] that was served on Defendant on or about September 14, 2018.

12.     This Action seeks the recovery of underpaid and unpaid amounts due to Plaintiffs

from Defendant on account of, and for reimbursement of, covered medical services provided by

---

[1] All references to sections of the Bankruptcy Code are to 11 U.S.C. §§ 101, *et seq.,* as amended.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Plaintiffs to the enrolled patient members of health benefit plans offered or administered by Defendant.  These amounts include medical care provided on dates of service (DOS) spanning the period from one year prior to the Petition Date through certain dates described in further detail below.

13.     Debtor Verity Health System of California, Inc. ("VHS"), a California nonprofit public benefit corporation, is the sole corporate member of each of St. Vincent, Seton, O'Connor, and St. Louise.  Each of the Plaintiffs is also a Debtor.

14.     On September 14, 2018, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors in these cases.

15.     On December 27, 2018, the Court entered an order [Docket No. 1153] that authorized the sale of substantially all of the assets of O'Connor and Saint Louise to a purchaser, the County of Santa Clara, pursuant to the terms of an *Asset Purchase Agreement* dated October 1, 2018 ("SCC APA").  Pursuant to Section 1.9 of the SCC APA, the sale excluded all accounts receivable owed to the Debtors based on covered medical services provided by O'Connor or Saint Louise prior to March 1, 2019, which accounts receivable remain property of the bankruptcy estates.

16.     On January 9, 2020, the Court entered an order [Docket No. 3934] that authorized the Debtors to implement an orderly closure of St. Vincent.  St. Vincent ceased providing medical care by January 31, 2020.   Subsequently, on April 10, 2020, the Court entered an order [Docket No. 4530] which authorized the sale of certain assets of St. Vincent to a purchaser, the Chan Soon-Shiong Family Foundation, pursuant to the terms of an *Asset Purchase Agreement* dated March 30, 2020 ("SVMC APA").  Pursuant to Section 1.8 of the SVMC APA, the sale excluded all accounts receivable owed to the Debtors based on covered medical services provided by St. Vincent prior to February 1, 2020, which accounts receivable remain property of the bankruptcy estates.

17.     On April 23, 2020, the Court entered an order [Docket No. 4634] that authorized the sale of substantially all of the assets of Seton to a purchaser, AHMC Healthcare Inc., pursuant to the terms of an *Asset Purchase Agreement* dated March 30, 2020 ("SMC APA").  Pursuant to Section 1.8(g) of the SMC APA, the sale excluded all accounts receivable owed to the Debtors based on

DOCS_SF:103937.2 89566/002

covered medical services provided by Seton prior to August 14, 2020, which accounts receivable remain property of the bankruptcy estates.

18.    On August 14, 2020, the Court entered an order [Docket No. 5504] confirming the *Modified Second Amended Joint Chapter 11 Plan of Liquidation (Dated July 2, 2020) of the Debtors, the Prepetition Secured Creditors and the Committee* [Docket No. 5466] (the "Plan"). Upon the Effective Date of the Plan, all Causes of Action are vested in the Liquidating Trust created under the Plan (as such terms are defined in the Plan).  This Action is among the Causes of Action that are included in the Liquidating Trust Assets (as defined in the Plan).

19.    Plaintiffs have attempted to engage in "meet and confer" discussions with Care 1st in an effort to resolve the accounts receivable owed to Plaintiffs.  Plaintiffs bring this Action to recover unpaid or underpaid claims that remain due and owing from Care 1st for the period commencing one year prior to the Petition Date through (i) February 28, 2019, with respect to O'Connor and St. Louise, (ii) January 31, 2020, with respect to St. Vincent, and (iii) July 31, 2020, with respect to Seton, and to preserve Plaintiffs' rights to such claims on behalf of the Debtors' estates, in the following minimum amounts:

| Plaintiff | Amount Owed |
|---|---|
| St. Vincent | $2,290,122 |
| Seton | $113,136 |
| O'Connor | $475,496 |
| Saint Louise | $25,892 |
| **Total** | **$2,904,646** |

## FIRST CLAIM FOR RELIEF

### (For Breach of Written Contract by Plaintiff St. Vincent)

20.    Plaintiff St. Vincent refers to and incorporates herein each and every allegation contained in Paragraphs 1 through 19 above, as though fully set forth herein.

21.    Effective January 1, 2001, St. Vincent and Care 1st entered into a written Hospital Services Agreement, and effective January 1, 2013, St. Vincent and Care 1st entered into a written Hospital Services Agreement (MS-DRG) related to the provision of Medicare, each as amended and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

supplemented from time to time thereafter (the "St. Vincent/Care 1st Agreements"), under which Care 1st agreed to reimburse St. Vincent for covered medical services provided to Care 1st members at agreed upon rates.  True and correct copies of the St. Vincent/Care 1st Agreements are attached hereto and incorporated herein by reference as **Exhibits A-1 and A-2**.[2]

22.    Pursuant to Article IV of the St. Vincent/Care 1st Agreements, St. Vincent was required to submit claims for payment to Care 1st within 90 days of rendering services, or within the time frames mandated by applicable state or federal law, and Care 1st was required to promptly pay St. Vincent within the time frames mandated by applicable state or federal law.

23.    St. Vincent timely submitted hundreds of claims to Care 1st for medical services provided to Care 1st members, which were due and payable to St. Vincent between August 31, 2017, and the January 31, 2020.

24.    Care 1st has breached the St. Vincent/Care 1st Agreements by failing and refusing to pay St. Vincent for the services provided to Care 1st members, or by paying St. Vincent amounts less than what is owed pursuant to the terms of the St. Vincent/Care 1st Agreements, despite St. Vincent's timely submission of claims.  A list of the unpaid or underpaid claims (the "St. Vincent Claims"), including the dates of submission, amounts owed and partial payments, if any, all redacted to preserve confidential patient information, is attached hereto as **Exhibit B**.[3]

25.    St. Vincent is informed and believes that all disputed claim procedures have been substantially or wholly performed or satisfied, and that it has otherwise performed all terms and conditions required of it to be performed under the terms of the St. Vincent/Care 1st Agreements.

26.    Demand for payment of the unpaid and underpaid St. Vincent Claims was made, but Care 1st has failed and continues to fail and refuse to pay the St. Vincent Claims.

---

[2] The agreements attached as exhibits to this complaint contain compensation schedules setting forth the rates of compensation for services provided by each Plaintiff to Care 1st's members, which rates are confidential pursuant to the terms of the agreements.  The compensation schedules and related information are therefore omitted from the exhibits.  Further, each of the agreements is attached without its subsequent amendments, if any.

[3] Column A of the spreadsheets attached to this complaint describes each unpaid and underpaid claim by an internal identifier number to preserve patient confidentiality.  Plaintiff maintains detailed information regarding the claims associated with each internal identifier number, including patient names and account numbers.

DOCS_SF:103937.2 89566/002

27.    By reason of Care 1st's breach of the St. Vincent/Care 1st Agreements, St. Vincent has been damaged in the sum of not less than $2,290,122, plus interest thereon at the legal rate from and after thirty days after Care 1st's receipt of each St. Vincent Claim.

## SECOND CLAIM FOR RELIEF

### (For Turnover by Plaintiff St. Vincent)

28.    Plaintiff St. Vincent refers to and incorporates herein each and every allegation contained in Paragraphs 1 through 27 above, as though fully set forth herein.

29.    Pursuant to § 541 of the Bankruptcy Code, the amounts owed by Care 1st to St. Vincent under the terms of the St. Vincent/Care 1st Agreements constitute property of St. Vincent's estate in that they are matured and not subject to bona fide dispute.

30.    Pursuant to § 542 of the Bankruptcy Code, an entity in possession, custody, or control of property that the debtor may use, sell, or lease under § 363 of the Bankruptcy Code shall deliver such property or the value of same to the debtor.

31.    Pursuant to § 542(b) of the Bankruptcy Code, an entity that owes a matured debt that is property of the bankruptcy estate shall pay such debt to the debtor.

32.    St. Vincent made demand on Care 1st to turn over the amounts owed to it under the terms of the St. Vincent/Care 1st Agreements.

33.    Despite such demand, Care 1st has failed and continues to fail and refuse to turn over the sums owed to St. Vincent.

34.    St. Vincent is entitled to an order directing Care 1st to immediately pay the amounts owing to St. Vincent, plus interest thereon at the legal rate according to proof.

## THIRD CLAIM FOR RELIEF

### (For Unjust Enrichment by Plaintiff St. Vincent)

35.    Plaintiff St. Vincent refers to and incorporates herein each and every allegation contained in Paragraphs 1 through 34 above, as though fully set forth herein.

36.    St. Vincent provided health care services to Care 1st members on behalf of and for the benefit of Care 1st.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_SF:103937.2 89566/002

37.    St. Vincent provided the services with the understanding that it would be paid by Care 1st for the services provided, but Care 1st has failed to pay for such services.

38.    Care 1st has obtained the benefit of the services and has been unjustly enriched thereby to the detriment of St. Vincent.

39.    By reason thereof, St. Vincent is entitled to an order directing Care 1st to disgorge the amounts owing on the St. Vincent Claims, plus interest thereon at the legal rate according to proof.

### FOURTH CLAIM FOR RELIEF

**(For Damages for Violation of the Automatic Stay by Plaintiff St. Vincent)**

40.    Plaintiff St. Vincent refers to and incorporates herein each and every allegation contained in Paragraphs 1 through 39 above, as though fully set forth herein.

41.    Pursuant to § 541 of the Bankruptcy Code, the amounts owed by Care 1st to St. Vincent for the St. Vincent Claims constitute property of St. Vincent's bankruptcy estate.

42.    Pursuant to § 362(a)(3) of the Bankruptcy Code, the knowing retention of estate property violates the automatic stay and constitutes an act to exercise control over estate property.

43.    By retaining and failing to pay amounts due to St. Vincent for the St. Vincent Claims after actual notice of the Debtors' bankruptcies, Care 1st violated the automatic stay by exercising control over property of the bankruptcy estate within the meaning of § 362(a)(3) of the Bankruptcy Code.

44.    St. Vincent is entitled to a determination that Care 1st's exercise of control over amounts due to St. Vincent for the St. Vincent Claims violated, and continues to violate, the automatic stay and that St. Vincent is entitled to damages for violation of the automatic stay pursuant to § 105(a) of the Bankruptcy Code, according to proof.

### FIFTH CLAIM FOR RELIEF

**(For Breach of Written Contract by Plaintiff Seton)**

45.    Plaintiff Seton refers to and incorporates herein each and every allegation contained in Paragraphs 1 through 44 above, as though fully set forth herein.

46.    Effective January 1, 2013, Seton and Care 1st entered into one or more written agreements, including the Hospital Services Agreement (MS-DRG) related to the provision of

8

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Medicare, as amended and supplemented from time to time thereafter (the "Seton/Care 1st Agreement"), under which Care 1st agreed to reimburse Seton for covered medical services provided to Care 1st members at agreed upon rates. A true and correct copy of the Seton/Care 1st Agreement is attached hereto and incorporated herein by reference as **Exhibits C**.

47.    Pursuant to Article IV of the Seton/Care 1st Agreement, Seton was required to submit claims for payment to Care 1st within 90 days of rendering services, or within the time frames mandated by applicable state or federal law, and Care 1st was required to promptly pay Seton within the time frames mandated by applicable state or federal law.

48.    Seton timely submitted claims to Care 1st for medical services provided to Care 1st members, which were due and payable to Seton between August 31, 2017, and the July 31, 2020.

49.    Care 1st has breached the Seton/Care 1st Agreement by failing and refusing to pay Seton for the services provided to Care 1st members, or by paying Seton amounts less than what is owed pursuant to the terms of the Seton/Care 1st Agreement, despite Seton's timely submission of claims. A list of the unpaid or underpaid claims (the "Seton Claims"), including the dates of submission, amounts owed and partial payments, if any, all redacted to preserve confidential patient information, is attached hereto as **Exhibit D**.

50.    Seton is informed and believes that all disputed claim procedures have been substantially or wholly performed or satisfied, and that it has otherwise performed all terms and conditions required of it to be performed under the terms of the Seton/Care 1st Agreement.

51.    Demand for payment of the unpaid and underpaid Seton Claims was made, but Care 1st has failed and continues to fail and refuse to pay the Seton Claims.

52.    By reason of Care 1st's breach of the Seton/Care 1st Agreement, Seton has been damaged in the sum of not less than $113,136, plus interest thereon at the legal rate from and after thirty days after Care 1st's receipt of each Seton Claim.

## **SIXTH CLAIM FOR RELIEF**

### **(For Turnover by Plaintiff Seton)**

53.    Plaintiff Seton refers to and incorporates herein each and every allegation contained in Paragraphs 1 through 52 above, as though fully set forth herein.

DOCS_SF:103937.2 89566/002

54.     Pursuant to § 541 of the Bankruptcy Code, the amounts owed by Care 1st to Seton under the terms of the Seton/Care 1st Agreements constitute property of Seton's estate in that they are matured and not subject to bona fide dispute.

55.     Pursuant to § 542 of the Bankruptcy Code, an entity in possession, custody, or control of property that the debtor may use, sell, or lease under § 363 of the Bankruptcy Code shall deliver such property or the value of same to the debtor.

56.     Pursuant to § 542(b) of the Bankruptcy Code, an entity that owes a matured debt that is property of the bankruptcy estate shall pay such debt to the debtor.

57.     Seton made demand on Care 1st to turn over the amounts owed to it under the terms of the Seton/Care 1st Agreement.

58.     Despite such demand, Care 1st has failed and continues to fail and refuse to turn over the sums owed to Seton.

59.     Seton is entitled to an order directing Care 1st to immediately pay the amounts owing to Seton, plus interest thereon at the legal rate according to proof.

## SEVENTH CLAIM FOR RELIEF

### (For Unjust Enrichment by Plaintiff Seton)

60.     Plaintiff Seton refers to and incorporates herein each and every allegation contained in Paragraphs 1 through 59 above, as though fully set forth herein.

61.     Seton provided health care services to Care 1st members on behalf of and for the benefit of Care 1st.

62.     Seton provided the services with the understanding that it would be paid by Care 1st for the services provided, but Care 1st has failed to pay for such services.

63.     Care 1st has obtained the benefit of the services and has been unjustly enriched thereby to the detriment of Seton.

64.     By reason thereof, Seton is entitled to an order directing Care 1st to disgorge the amounts owing on the Seton Claims, plus interest thereon at the legal rate according to proof.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_SF:103937.2 89566/002

**EIGHTH CLAIM FOR RELIEF**

**(For Damages for Violation of the Automatic Stay by Plaintiff Seton)**

65.     Plaintiff Seton refers to and incorporates herein each and every allegation contained in Paragraphs 1 through 64 above, as though fully set forth herein.

66.     Pursuant to § 541 of the Bankruptcy Code, the amounts owed by Care 1st to Seton for the Seton Claims constitute property of Seton's bankruptcy estate.

67.     Pursuant to § 362(a)(3) of the Bankruptcy Code, the knowing retention of estate property violates the automatic stay and constitutes an act to exercise control over estate property.

68.     By retaining and failing to pay amounts due to Seton for the Seton Claims after actual notice of the Debtors' bankruptcies, Care 1st violated the automatic stay by exercising control over property of the bankruptcy estate within the meaning of § 362(a)(3) of the Bankruptcy Code.

69.     Seton is entitled to a determination that Care 1st's exercise of control over amounts due to Seton for the Seton Claims violated, and continues to violate, the automatic stay and that Seton is entitled to damages for violation of the automatic stay pursuant to § 105(a) of the Bankruptcy Code, according to proof.

**NINTH CLAIM FOR RELIEF**

**(For Breach of Written Contract by Plaintiff O'Connor)**

70.     Plaintiff O'Connor refers to and incorporates herein each and every allegation contained in Paragraphs 1 through 69 above, as though fully set forth herein.

71.     Effective January 1, 2013, O'Connor and Care 1st entered into one or more written agreements, including the Hospital Services Agreement (MS-DRG) related to the provision of Medicare, as amended and supplemented from time to time thereafter (the "O'Connor/Care 1st Agreement"), under which Care 1st agreed to reimburse O'Connor for covered medical services provided to Care 1st members at agreed upon rates.  A true and correct copy of the O'Connor/Care 1st Agreement is attached hereto and incorporated herein by reference as **Exhibits E**.

72.     Pursuant to Article IV of the O'Connor/Care 1st Agreement, O'Connor was required to submit claims for payment to Care 1st within 90 days of rendering services, or within the time

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

frames mandated by applicable state or federal law, and Care 1st was required to promptly pay O'Connor within the time frames mandated by applicable state or federal law.

73.    O'Connor timely submitted claims to Care 1st for medical services provided to Care 1st members, which were due and payable to O'Connor between August 31, 2017, and the February 28, 2019.

74.    Care 1st has breached the O'Connor/Care 1st Agreement by failing and refusing to pay O'Connor for the services provided to Care 1st members, or by paying O'Connor amounts less than what is owed pursuant to the terms of the O'Connor/Care 1st Agreement, despite O'Connor's timely submission of claims.  A list of the unpaid or underpaid claims (the "O'Connor Claims"), including the dates of submission, amounts owed and partial payments, if any, all redacted to preserve confidential patient information, is attached hereto as **Exhibit F**.

75.    O'Connor is informed and believes that all disputed claim procedures have been substantially or wholly performed or satisfied, and that it has otherwise performed all terms and conditions required of it to be performed under the terms of the O'Connor/Care 1st Agreements.

76.    Demand for payment of the unpaid and underpaid O'Connor Claims was made, but Care 1st has failed and continues to fail and refuse to pay the O'Connor Claims.

77.    By reason of Care 1st's breach of the O'Connor/Care 1st Agreement, O'Connor has been damaged in the sum of not less than $475,496, plus interest thereon at the legal rate from and after thirty days after Care 1st's receipt of each O'Connor Claim.

### **TENTH CLAIM FOR RELIEF**

### **(For Turnover by Plaintiff O'Connor)**

78.    Plaintiff O'Connor refers to and incorporates herein each and every allegation contained in Paragraphs 1 through 77 above, as though fully set forth herein.

79.    Pursuant to § 541 of the Bankruptcy Code, the amounts owed by Care 1st to O'Connor under the terms of the O'Connor/Care 1st Agreements constitute property of O'Connor's estate in that they are matured and not subject to bona fide dispute.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_SF:103937.2 89566/002

80.    Pursuant to § 542 of the Bankruptcy Code, an entity in possession, custody, or control of property that the debtor may use, sell, or lease under § 363 of the Bankruptcy Code shall deliver such property or the value of same to the debtor.

81.    Pursuant to § 542(b) of the Bankruptcy Code, an entity that owes a matured debt that is property of the bankruptcy estate shall pay such debt to the debtor.

82.    O'Connor made demand on Care 1st to turn over the amounts owed to it under the terms of the O'Connor/Care 1st Agreement.

83.    Despite such demand, Care 1st has failed and continues to fail and refuse to turn over the sums owed to O'Connor.

84.    O'Connor is entitled to an order directing Care 1st to immediately pay the amounts owing to O'Connor, plus interest thereon at the legal rate according to proof.

## ELEVENTH CLAIM FOR RELIEF

### (For Unjust Enrichment by Plaintiff O'Connor)

85.    Plaintiff O'Connor refers to and incorporates herein each and every allegation contained in Paragraphs 1 through 84 above, as though fully set forth herein.

86.    O'Connor provided health care services to Care 1st members on behalf of and for the benefit of Care 1st.

87.    O'Connor provided the services with the understanding that it would be paid by Care 1st for the services provided, but Care 1st has failed to pay for such services.

88.    Care 1st has obtained the benefit of the services and has been unjustly enriched thereby to the detriment of O'Connor.

89.    By reason thereof, O'Connor is entitled to an order directing Care 1st to disgorge the amounts owing on the O'Connor Claims, plus interest thereon at the legal rate according to proof.

## TWELFTH CLAIM FOR RELIEF

### (For Damages for Violation of the Automatic Stay by Plaintiff O'Connor)

90.    Plaintiff O'Connor refers to and incorporates herein each and every allegation contained in Paragraphs 1 through 89 above, as though fully set forth herein.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

91.     Pursuant to § 541 of the Bankruptcy Code, the amounts owed by Care 1st to O'Connor for the O'Connor Claims constitute property of O'Connor's bankruptcy estate.

92.     Pursuant to § 362(a)(3) of the Bankruptcy Code, the knowing retention of estate property violates the automatic stay and constitutes an act to exercise control over estate property.

93.     By retaining and failing to pay amounts due to O'Connor for the O'Connor Claims after actual notice of the Debtors' bankruptcies, Care 1st violated the automatic stay by exercising control over property of the bankruptcy estate within the meaning of § 362(a)(3) of the Bankruptcy Code.

94.     O'Connor is entitled to a determination that Care 1st's exercise of control over amounts due to O'Connor for the O'Connor Claims violated, and continues to violate, the automatic stay and that O'Connor is entitled to damages for violation of the automatic stay pursuant to § 105(a) of the Bankruptcy Code, according to proof.

## THIRTEENTH CLAIM FOR RELIEF

### (For Breach of Written Contract by Plaintiff Saint Louise)

95.     Plaintiff Saint Louise refers to and incorporates herein each and every allegation contained in Paragraphs 1 through 94 above, as though fully set forth herein.

96.     Effective January 1, 2013, Saint Louise and Care 1st entered into one or more written agreements, including the Hospital Services Agreement (MS-DRG) related to the provision of Medicare, as amended and supplemented from time to time thereafter (the "Saint Louise/Care 1st Agreement"), under which Care 1st agreed to reimburse Saint Louise for covered medical services provided to Care 1st members at agreed upon rates.  A true and correct copy of the Saint Louise/Care 1st Agreement is attached hereto and incorporated herein by reference as **Exhibits G**.

97.     Pursuant to Article IV of the Saint Louise/Care 1st Agreement, Saint Louise was required to submit claims for payment to Care 1st within 90 days of rendering services, or within the time frames mandated by applicable state or federal law, and Care 1st was required to promptly pay Saint Louise within the time frames mandated by applicable state or federal law.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

98.    Saint Louise timely submitted claims to Care 1st for medical services provided to Care 1st members, which were due and payable to Saint Louise between August 31, 2017, and the February 28, 2019.

99.    Care 1st has breached the Saint Louise/Care 1st Agreement by failing and refusing to pay Saint Louise for the services provided to Care 1st members, or by paying Saint Louise amounts less than what is owed pursuant to the terms of the Saint Louise/Care 1st Agreement, despite Saint Louise's timely submission of claims.  A list of the unpaid or underpaid claims (the "Saint Louise Claims"), including the dates of submission, amounts owed and partial payments, if any, all redacted to preserve confidential patient information, is attached hereto as **Exhibit H**.

100.    Saint Louise is informed and believes that all disputed claim procedures have been substantially or wholly performed or satisfied, and that it has otherwise performed all terms and conditions required of it to be performed under the terms of the Saint Louise/Care 1st Agreements.

101.    Demand for payment of the unpaid and underpaid Saint Louise Claims was made, but Care 1st has failed and continues to fail and refuse to pay the Saint Louise Claims.

102.    By reason of Care 1st's breach of the Saint Louise/Care 1st Agreement, Saint Louise has been damaged in the sum of not less than $25,892, plus interest thereon at the legal rate from and after thirty days after Care 1st's receipt of each Saint Louise Claim.

## FOURTEENTH CLAIM FOR RELIEF

### (For Turnover by Plaintiff Saint Louise)

103.    Plaintiff Saint Louise refers to and incorporates herein each and every allegation contained in Paragraphs 1 through 102 above, as though fully set forth herein.

104.    Pursuant to § 541 of the Bankruptcy Code, the amounts owed by Care 1st to Saint Louise under the terms of the Saint Louise/Care 1st Agreements constitute property of Saint Louise's estate in that they are matured and not subject to bona fide dispute.

105.    Pursuant to § 542 of the Bankruptcy Code, an entity in possession, custody, or control of property that the debtor may use, sell, or lease under § 363 of the Bankruptcy Code shall deliver such property or the value of same to the debtor.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

15

106.    Pursuant to § 542(b) of the Bankruptcy Code, an entity that owes a matured debt that is property of the bankruptcy estate shall pay such debt to the debtor.

107.    Saint Louise made demand on Care 1st to turn over the amounts owed to it under the terms of the Saint Louise/Care 1st Agreement.

108.    Despite such demand, Care 1st has failed and continues to fail and refuse to turn over the sums owed to Saint Louise.

109.    Saint Louise is entitled to an order directing Care 1st to immediately pay the amounts owing to Saint Louise, plus interest thereon at the legal rate according to proof.

**FIFTEENTH CLAIM FOR RELIEF**

**(For Unjust Enrichment by Plaintiff Saint Louise)**

110.    Plaintiff Saint Louise refers to and incorporates herein each and every allegation contained in Paragraphs 1 through 109 above, as though fully set forth herein.

111.    Saint Louise provided health care services to Care 1st members on behalf of and for the benefit of Care 1st.

112.    Saint Louise provided the services with the understanding that it would be paid by Care 1st for the services provided, but Care 1st has failed to pay for such services.

113.    Care 1st has obtained the benefit of the services and has been unjustly enriched thereby to the detriment of Saint Louise.

114.    By reason thereof, Saint Louise is entitled to an order directing Care 1st to disgorge the amounts owing on the Saint Louise Claims, plus interest thereon at the legal rate according to proof.

**SIXTEENTH CLAIM FOR RELIEF**

**(For Damages for Violation of the Automatic Stay by Plaintiff Saint Louise)**

115.    Plaintiff Saint Louise refers to and incorporates herein each and every allegation contained in Paragraphs 1 through 114 above, as though fully set forth herein.

116.    Pursuant to § 541 of the Bankruptcy Code, the amounts owed by Care 1st to Saint Louise for the Saint Louise Claims constitute property of Saint Louise's bankruptcy estate.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_SF:103937.2 89566/002

117.    Pursuant to § 362(a)(3) of the Bankruptcy Code, the knowing retention of estate property violates the automatic stay and constitutes an act to exercise control over estate property.

118.    By retaining and failing to pay amounts due to Saint Louise for the Saint Louise Claims after actual notice of the Debtors' bankruptcies, Care 1st violated the automatic stay by exercising control over property of the bankruptcy estate within the meaning of § 362(a)(3) of the Bankruptcy Code.

119.    Saint Louise is entitled to a determination that Care 1st's exercise of control over amounts due to Saint Louise for the Saint Louise Claims violated, and continues to violate, the automatic stay and that Saint Louise is entitled to damages for violation of the automatic stay pursuant to § 105(a) of the Bankruptcy Code, according to proof.

### **PRAYER**

WHEREFORE, Plaintiff prays for entry of judgment against Care 1st as follows:

On the First Claim for Relief asserted by Plaintiff St. Vincent:

1.    For judgment against Care 1st in the sum of $2,290,122, or such other amount according to proof; and

2.    For interest thereon at the legal rate from 30 days after Care 1st's receipt of each St. Vincent Claim until paid in full.

On the Second and Third Claims for Relief asserted by Plaintiff St. Vincent:

3.    For an order directing Care 1st to turn over or disgorge to St. Vincent the sum of $2,290,122, or such other amount according to proof, plus interest thereon at the legal rate from the date of judgment until paid in full.

On the Fourth Claim for Relief asserted by Plaintiff St. Vincent:

4.    For a determination that Care 1st's exercise and control over amounts due to St. Vincent for the St. Vincent Claims violated the automatic stay, and for an award of compensatory damages according to proof.

On the Fifth Claim for Relief asserted by Plaintiff Seton:

5.    For judgment against Care 1st in the sum of $113,136, or such other amount according to proof; and

6.      For interest thereon at the legal rate from 30 days after Care 1st's receipt of each Seton Claim until paid in full.

On the Sixth and Seventh Claims for Relief asserted by Plaintiff Seton:

7.      For an order directing Care 1st to turn over or disgorge to Seton the sum of $113,136, or such other amount according to proof, plus interest thereon at the legal rate from the date of judgment until paid in full.

On the Eighth Claim for Relief asserted by Plaintiff Seton:

8.      For a determination that Care 1st's exercise and control over amounts due to Seton for the Seton Claims violated the automatic stay, and for an award of compensatory damages according to proof.

On the Ninth Claim for Relief asserted by Plaintiff O'Connor:

9.      For judgment against Care 1st in the sum of $475,496, or such other amount according to proof; and

10.      For interest thereon at the legal rate from 30 days after Care 1st's receipt of each O'Connor Claim until paid in full.

On the Tenth and Eleventh Claims for Relief asserted by Plaintiff O'Connor:

11.      For an order directing Care 1st to turn over or disgorge to O'Connor the sum of $475,496, or such other amount according to proof, plus interest thereon at the legal rate from the date of judgment until paid in full.

On the Twelfth Claim for Relief asserted by Plaintiff O'Connor:

12.      For a determination that Care 1st's exercise and control over amounts due to O'Connor for the O'Connor Claims violated the automatic stay, and for an award of compensatory damages according to proof.

On the Thirteenth Claim for Relief asserted by Plaintiff Saint Louise:

13.      For judgment against Care 1st in the sum of $25,892, or such other amount according to proof; and

14.      For interest thereon at the legal rate from 30 days after Care 1st's receipt of each Saint Louise Claim until paid in full.

18

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

<u>On the Fourteenth and Fifteenth Claims for Relief asserted by Plaintiff Saint Louise:</u>

2

15.    For an order directing Care 1st to turn over or disgorge to Saint Louise the sum of

3

$25,892, or such other amount according to proof, plus interest thereon at the legal rate from the date

4

of judgment until paid in full.

5

<u>On the Sixteenth Claim for Relief asserted by Plaintiff Saint Louise:</u>

6

16.    For a determination that Care 1st's exercise and control over amounts due to Saint

7

Louise for the Saint Louise Claims violated the automatic stay, and for an award of compensatory

8

damages according to proof.

9

<u>On All Claims for Relief asserted by Plaintiffs against Care 1st:</u>

10

17.    For such other and further relief the Court deems just and proper.

11

12

Dated:  August 28, 2020                    PACHULSKI STANG ZIEHL & JONES LLP

13

14

<u>/s/ Steven J. Kahn</u>
Steven J. Kahn

15

Co-Counsel to Chapter 11 Debtors and
Debtors In Possession

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

19

DOCS_SF:103937.2 89566/002