1   Michael B. Reynolds (SBN 174534)
    mreynolds@swlaw.com
2   Andrew B. Still (SBN 312444)
    astill@swlaw.com
3   SNELL & WILMER L.L.P.
    600 Anton Blvd, Suite 1400
4   Costa Mesa, California 92626-7689
    Telephone:    714.427.7000
5   Facsimile:    714.427.7799

6   Attorneys for Defendant Blue Shield of California
    Promise Health Plan f/k/a Care 1st Health Plan

7              UNITED STATES BANKRUPTCY COURT

8       CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

9   In re:                                    Lead Case No. 2:18-bk-20151-ER

10  VERITY HEALTH SYSTEM OF              Jointly Administered With:
    CALIFORNIA, INC., et al.,            Case No.: 2:18-bk-20162-ER
11                                       Case No.: 2:18-bk-20163-ER
            Debtors and Debtors In Possession.   Case No.: 2:18-bk-20164-ER
12                                       Case No.: 2:18-bk-20165-ER
                                         Case No.: 2:18-bk-20167-ER
13  Affects:                             Case No.: 2:18-bk-20168-ER
                                         Case No.: 2:18-bk-20169-ER
14  ☐ All Debtors                        Case No.: 2:18-bk-20171-ER
                                         Case No.: 2:18-bk-20172-ER
15  ☐ Verity Health System of California, Inc.   Case No.: 2:18-bk-20173-ER
    ☒ O'Connor Hospital                  Case No.: 2:18-bk-20175-ER
16  ☒ Saint Louise Regional Hospital     Case No.: 2:18-bk-20176-ER
    ☐ St. Francis Medical Center         Case No.: 2:18-bk-20178-ER
17  ☒ St. Vincent Medical Center         Case No.: 2:18-bk-20179-ER
    ☒ Seton Medical Center               Case No.: 2:18-bk-20180-ER
18  ☐ O'Connor Hospital Foundation       Case No.: 2:18-bk-20181-ER
    ☐ Saint Louise Regional Hospital Foundation
19  ☐ St. Francis Medical Center of Lynwood   Chapter 11 Cases
       Foundation
20  ☐ St. Vincent Foundation             Adv. No. 2:20-ap-01559-ER
    ☐ St. Vincent Dialysis Center, Inc.
21  ☐ Seton Medical Center Foundation    **Blue Shield of California Promise Health**
    ☐ Verity Business Services           **Plan's Notice of Motion and Motion to:**
22  ☐ Verity Medical Foundation
    ☐ Verity Holdings, LLC               **(1) Dismiss Claims for Turnover,**
23  ☐ De Paul Ventures, LLC              **Violation of the Automatic Stay and**
    ☐ De Paul Ventures - San Jose Dialysis, LLC   **Unjust Enrichment; and**
24
            Debtors and Debtors In Possession.   **(2) Compel Arbitration and Stay**
25                                       **Adversary Proceeding; Memorandum of**
                                         **Points and Authorities**
26                                       Hearing Information:
                                         Date:       November 24, 2020
27                                       Time:       11:00 a.m.
                                         Courtroom: 1568
28                                       Address:    255 East Temple Street
                                                     Los Angeles, CA 90012

*(left margin, vertical text)* SNELL & WILMER L.L.P. — LAW OFFICES — 600 ANTON BLVD, SUITE 1400 — COSTA MESA, CALIFORNIA 92626-7689

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1   ST. VINCENT MEDICAL CENTER, a
2   California nonprofit public benefit corporation,
    SETON MEDICAL CENTER, a California
3   nonprofit public benefit corporation,
    O'CONNOR HOSPITAL, a California
4   nonprofit public benefit corporation, and
    SAINT LOUISE REGIONAL HOSPITAL, a
5   California nonprofit public benefit corporation,

6                    Plaintiffs,

7        v.

8   BLUE SHIELD OF CALIFORNIA PROMISE
    HEALTH PLAN f/k/a CARE 1ST HEALTH
9   PLAN, a California corporation,

10                   Defendant.

11

12       TO THE HONORABLE ERNEST M. ROBLES, UNITED STATES BANKRUPTCY

13  JUDGE, PLAINTIFFS, THEIR COUNSEL OF RECORD, AND ALL PARTIES IN INTEREST:

14       PLEASE TAKE NOTICE that on November 24, 2020, at 11:00 a.m., or as soon thereafter

15  as counsel may be heard, before the Honorable Ernest M. Robles, United States Bankruptcy

16  Judge for the Central District of California, in Courtroom 1568 of the United States Bankruptcy

17  Court located at 255 East Temple Street, Los Angeles, California 90012, defendant Blue Shield of

18  California Promise Health Plan f/k/a Care 1st Health Plan ("BSC Promise" or "Care 1st"[1]), by

19  and through undersigned counsel, will and hereby does move (the "Motion") the Court for an

20  order:

21           (1)     Dismissing the Second, Sixth, Tenth and Fourteenth Claims for Relief for

22  Turnover under Section 542,[2] the Fourth, Eighth, Twelfth and Sixteenth Claims for Relief

23  for Violation of the Automatic Stay under Section 362, and the Third, Seventh, Eleventh

24  and Fifteenth Claims for Relief for Unjust Enrichment asserted by plaintiffs St. Vincent

25  Medical Center ("St. Vincent"), Seton Medical Center ("Seton"), O'Connor Hospital

26

27  [1] Plaintiffs refer to BSC Promise as "Care 1st" throughout the Complaint. For convenience, BSC Promise uses that
    term interchangeably throughout, without reference to the date on which the name change became effective.
28  [2] Unless otherwise indicated, all "Code," "chapter," and "Section" references are to Title 11 of the United States
    Code (the "Bankruptcy Code"), 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of
    Bankruptcy Procedure ("FRBP") which make applicable certain Federal Rules of Civil Procedure ("FRCP").

                                                    MOTION TO DISMISS AND
                                                    TO COMPEL ARBITRATION

1  ("O'Connor") and Saint Louise Regional Hospital ("Saint Louise") (St. Vincent, Seton,

2  O'Connor and Saint Louise are each referred to as "Plaintiff" and collectively as the

3  "Plaintiffs"), respectively, in their Complaint for Breach of Written Contracts, Turnover,

4  Unjust Enrichment, and Damages for Violation of the Automatic Stay, filed on August 28,

5  2020, as Docket No. 1 (the "Complaint"), in the above-captioned adversary proceeding

6  (the "Adversary Proceeding"); and

7          (2)    Compelling Plaintiffs to arbitrate the First, Fifth, Ninth and Thirteenth

8  Claims for Breach of Contract against Care 1st in accordance with each Plaintiff's

9  arbitration agreement with Care 1st and related dispute resolution procedures, and to stay

10  the Adversary Proceeding pending arbitration.

11          PLEASE TAKE FURTHER NOTICE that this Motion is made pursuant to FRBP 7012

12  and 9 U.S.C. Sections 2-4, and is based on this Notice of Motion and Motion, the attached

13  Memorandum of Points and Authorities, the Request for Judicial Notice filed concurrently

14  herewith, the pleadings and papers on file in this Adversary Proceeding and the main bankruptcy

15  case, and on such other and further matters as the Court may allow.

16          PLEASE TAKE FURTHER NOTICE that, pursuant to Local Bankruptcy Rule 9013-1(f),

17  any party wishing to oppose or respond to this Motion is required to file a written response with

18  the Court and serve it on counsel for BSC Promise at least fourteen (14) days before the hearing

19  on the Motion.

20

21  Dated: October 30, 2020           Respectfully submitted,

22                         SNELL & WILMER L.L.P.

23

24                         By:  */s/ Michael B. Reynolds*
                                Michael B. Reynolds

25                                  Andrew B. Still
                                Attorneys for Defendant Blue Shield of

26                                  California Promise Health Plan f/k/a Care
                                1st Health Plan

27

28

MOTION TO DISMISS AND
TO COMPEL ARBITRATION

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................9

II. STATEMENT OF FACTS ....................................................................................10

    A.    The Debtors and Their Bankruptcy Cases. ...........................................10

    B.    Care 1st and the Agreements.................................................................10

    C.    The Arbitration Provisions. ...................................................................11

    D.    Plaintiffs' Complaint..............................................................................12

III. THE CLAIMS FOR TURNOVER, VIOLATION OF THE AUTOMATIC STAY
AND UNJUST ENRICHMENT MUST BE DISMISSED.................................14

    A.    Legal Standard for Dismissal. ..............................................................14

    B.    Plaintiffs Fail to State a Plausible Claim for Turnover under Section 542. ...........15

    C.    Plaintiffs Fail to State a Plausible Claim for Violation of the Automatic
Stay......................................................................................................17

    D.    Plaintiffs Fail to State a Plausible Claim for Unjust Enrichment...........18

        1.    California Law Does Not Recognize a Cause of Action for Unjust
Enrichment. ...............................................................................18

        2.    Unjust Enrichment Claims Fail Where There Is an Express
Agreement. ................................................................................19

        3.    Care 1st Did Not Receive any Benefit and Therefore Was Not
Unjustly Enriched. .....................................................................20

IV. ARBITRATION SHOULD BE COMPELLED FOR THE BREACH OF CONTRACT
CAUSES OF ACTION AND THIS ADVERSARY PROCEEDING SHOULD BE
DISMISSED OR STAYED .............................................................................20

    A.    Longstanding and Binding Precedent Favors Enforcing Arbitration
Agreements. ...........................................................................................20

    B.    Arbitration Agreements Must Be Enforced In Bankruptcy For *Non*-Core
Matters; They Must Also Be Enforced For Core Matters Where Doing So
Does Not Conflict With Bankruptcy Law...............................................21

    C.    Plaintiffs' Arbitrable Claims are Not Core Proceedings........................23

    D.    The Arbitration Provisions are Enforceable............................................24

        1.    The Arbitration Provisions Are Valid. .......................................25

        2.    The Arbitration Provisions Encompass the Breach of Contract
Claims. .......................................................................................26

    E.    The Adversary Proceeding Should be Dismissed or Stayed Pending
Arbitration. .............................................................................................27

V. CONCLUSION ....................................................................................................28

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

MOTION TO DISMISS AND
TO COMPEL ARBITRATION

1

# TABLE OF AUTHORITIES

2

**Page(s)**

3

## CASES

4

5

*Allied-Bruce Terminix Companies, Inc. v. Dobson*,
   513 U.S. 265 (1995) .................................................................................................... 25

6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................... 14, 15, 16

7

*Aspire Home Healthcare, Inc. v. Therastaff, LLC*,
   No. 13CV2917-MMA (JLB), 2014 WL 12539917 (S.D. Cal. June 9, 2014) ........................ 27

8

*AT&T Techs., Inc. v. Communications Workers of Am.*,
   475 U.S. 643 (1986) .................................................................................................... 27

9

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................... 14, 15, 16

10

*California Fed. Bank v. Matreyek*,
   8 Cal. App. 4th 125 (1992) .................................................................................... 18, 20

11

*California Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*,
   94 Cal. App. 4th 151 (2001) ........................................................................................ 19

12

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) ................................................................................ 21, 25

13

*Citizens Bank v. Alafabco, Inc.*,
   539 U.S. 52 (2003) ...................................................................................................... 25

14

*Continental Ins. Co. v. Thorpe Insulation Co., (In re Thorpe Insulation Co.)*,
   671 F.3d 1011 (9th Cir. 2012) ................................................................................ 21, 22

15

*Dean Witter Reynolds Inc. v. Byrd*,
   470 U.S. 213 (1985) ................................................................................................ 21, 24

16

*Genesco, Inc. v. T. Kakiuchi & Co.*,
   815 F.2d 840 (2d Cir. 1987) ........................................................................................ 26

17

*Ghirardo v. Antonioli*,
   14 Cal. 4th 39 (1996) .................................................................................................. 18

18

*Gilmer v. Interstate/Johnson Lane Corp.*,
   500 U.S. 20 (1991) ...................................................................................................... 21

19

*Hedging Concepts, Inc. v. First Alliance Mortg. Co.*,
   41 Cal. App. 4th 1410 (1996) ...................................................................................... 19

20

*In re Castlerock Properties*,
   781 F.2d 159 (9th Cir. 1986) ....................................................................................... 24

21

*In re Charter Co.*,
   913 F.2d 1575 (11th Cir. 1990) ................................................................................... 16

22

*In re Del Mission Ltd.*,
   98 F.3d 1147 (9th Cir. 1996) ....................................................................................... 18

23

*In re Falzerano*,
   686 F.3d 885 (8th Cir. 2012) ....................................................................................... 16

24

*In re Graves*,
   609 F.3d 1153 (10th Cir. 2010) ................................................................................... 15

25

26

27

28

MOTION TO DISMISS AND
TO COMPEL ARBITRATION

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*In re Gurga,*
176 B.R. 196 (9th Cir. BAP 1994)................................................................ 16, 23, 24

*In re Harris Pine Mills,*
44 F.3d 1431 (9th Cir. 1995).................................................................................. 23

*In re Hechinger Investment Co. of Delaware, Inc.,*
282 BR 149 (Bankr. D. Del. 2002) ......................................................................... 16

*In re Lauria,*
243 B.R. 705 (Bankr. N.D. Ill. 2000)...................................................................... 16

*In re Mintze,*
434 F.3d 222 (3rd Cir. 2006) .......................................................................... 21, 22

*In re National Gypsum Co.,*
118 F.3d 1056 (5th Cir. 1997).............................................................................. 22

*In re Tirex Int'l, Inc.,*
395 B.R. 182 (Bankr. S.D. Fla. 2008).................................................................... 26

*In re Tracht Gut, LLC,*
503 B.R. 804 (9th Cir. BAP 2017) ........................................................................ 15

*In re U.S. Lines,*
197 F.3d 631 (2nd Cir. 1999)............................................................................... 22

*In re Welded Construction, L.P.,*
609 B.R. 101 (Bankr. D. Del. 2019) ................................................................ 17, 18

*In re West Coast Video Enterprises, Inc.,*
145 B.R. 484 (Bankr. E.D. Pa. 1992).................................................................... 17

*Johnmohammadi v. Bloomingdale's, Inc.,*
755 F.3d 1072 (9th Cir. 2014).............................................................................. 27

*Klein v. Chevron U.S.A., Inc.,*
202 Cal. App. 4th 1342 (2012) ............................................................................. 19

*Kuehner v. Dickinson & Co.,*
84 F.3d 316 (9th Cir. 1996).................................................................................. 24

*Lance Camper Manuf. Corp. v. Republic Indemn. Co.,*
44 Cal. App. 4th 194 (1996) ................................................................................. 19

*Levine v. Blue Shield of California,*
189 Cal. App. 4th 1117 (2010) ............................................................................. 18

*Momot v. Mastro,*
652 F.3d 982 (9th Cir. 2011)................................................................................ 21

*Mor-Ben Ins. Mkts. Corp. v. Trident Gen. Ins. Co. (In re Mor-Ben Ins. Mkts. Corp.),*
73 B.R. 644 (9th Cir. BAP 1987) .......................................................................... 21

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,*
460 U.S. 1 (1983) ................................................................................................ 21

*Moss v. U.S. Secret Serv.,*
572 F.3d 962 (9th Cir. 2009)................................................................................ 15

*Phillips v. Congelton, L.L.C. (In re White Mountain Mining Co.),*
403 F.3d 164 (4th Cir. 2005)................................................................................ 22

*Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC,*
55 Cal. 4th 223 (2012) ........................................................................................ 26

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

MOTION TO DISMISS AND
TO COMPEL ARBITRATION

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Republic of Nicar. v. Std. Fruit Co.*,
  937 F.2d 469 (9th Cir. 1991)...................................................................................... 24

*Shearson/American Express, Inc. v. McMahon*,
  482 U.S. 220 (1987)........................................................................................... 21, 22

*Shroyer v. New Cingular Wireless Services, Inc.*,
  622 F.3d 1035 (9th Cir. 2010)................................................................................. 14

*Sovak v. Chugai Pharm. Co.*,
  280 F.3d 1266 (9th Cir. 2002)................................................................................. 26

*Target Corporation v. Wolters Kluwer Health, Inc.*,
  No. CV 15-6350-AB (FFMx) 2015 WL 12646483 (C.D.Cal. Dec. 16, 2015)......................... 27

*Toledo v. Kaiser Permanente Med. Group*,
  987 F. Supp. 1174 (N.D. Cal. 1997)........................................................................ 25

*Trans Chemical Ltd. v. China Nat. Mach. Import and Export Corp.*,
  161 F.3d 314 (5th Cir. 1998).................................................................................. 25

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003).................................................................................. 15

*United States v. Whiting Pools, Inc.*,
  462 U.S. 198 (1983)........................................................................................... 15

*Villarreal v. Perfection Pet Foods, LLC*,
  No. 116CV01661LJOEPG, 2017 WL 1353802 (E.D. Cal. Apr. 10, 2017).............................. 26

*Volt Info. Sci., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*,
  489 U.S. 468 (1989)........................................................................................... 26

*Whiting-Turner Contracting Co. v. Elec. Mach. Enters., Inc. (In re Elec. Mach.
  Enters., Inc.)*,
  479 F.3d 791 (11th Cir. 2007)............................................................................ 21, 22

*Wolsey, Ltd. v. Foodmaker, Inc.*,
  144 F.3d 1205 (9th Cir. 1998)................................................................................ 26

*Ziober v. BLB Res., Inc.*,
  839 F.3d 814 (9th Cir. 2016)................................................................................. 20

## STATUTES

11 U.S.C. § 362 .................................................................................................... 13
11 U.S.C. § 362(a) ................................................................................................ 17
11 U.S.C. § 362(a)(3) ....................................................................................... 17, 18
11 U.S.C. § 362(c)(1) ............................................................................................ 17
11 U.S.C. § 542 ...................................................................................... 12, 13, 15, 16, 17
28 U.S.C. § 157(b) ................................................................................................ 23
9 U.S.C. § 2 ................................................................................................. 21, 24, 25
9 U.S.C. § 3 ................................................................................................. 21, 27
9 U.S.C. § 4 ................................................................................................. 21, 25, 27

## RULES

Fed. R. Bankr. P. 7012 ....................................................................................... 17, 18, 20

MOTION TO DISMISS AND
TO COMPEL ARBITRATION

SNELL & WILMER
———— L.L.P. ————
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 14

**REGULATIONS**

42 C.F.R. 1395 ........................................................................................................................ 25

SNELL & WILMER
——— L.L.P. ———
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

MOTION TO DISMISS AND
TO COMPEL ARBITRATION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**INTRODUCTION**

Though framed as a core bankruptcy matter, this action is in fact, an adversary proceeding brought by Plaintiffs against BSC Promise for breach of contract. The essence of Plaintiffs' Complaint is that BSC Promise improperly denied or underpaid medical claims submitted by Plaintiffs pursuant to their provider agreements with BSC Promise.  Plaintiffs are hospitals contracted with BSC Promise to provide health care services to BSC Promise's members in exchange for contracted claims payments. In the normal course of business, hospitals and health plans routinely disagree about claims denials (for example, for lack of medical necessity or failure to obtain prior authorization), and they resolve those disputes through contractual provider appeals processes.  If those efforts are unsuccessful, arbitration ensues before either AAA or JAMS arbitrators specializing in these types of disputes.  But instead of complying with the arbitration provisions contained in those agreements, Plaintiffs have improperly sued BSC Promise for turnover and violation of the automatic stay in a misguided attempt to invoke the Bankruptcy Court's jurisdiction and to avoid arbitration.  In support, Plaintiffs allege that these medical claims are not subject to bona fide dispute and BSC Promise's refusal to pay them constitutes the knowing retention of estate property.

But Plaintiffs' own Complaint demonstrates that those allegations are illogical and without merit.  As Plaintiffs admit in their Complaint, the alleged receivables at issue are plainly subject to bona fide dispute in that they have already been denied on separate occasions. Accordingly, Plaintiffs' claims for turnover and violation of the automatic stay must be dismissed.  In addition, because there is an express binding contract between the parties, Plaintiffs' quasi-contractual, unjust enrichment claims fail as a matter of law and must be dismissed. Finally, BSC Promise seeks to compel arbitration of Plaintiffs' breach of contract claims related to the disputed receivables as required by the parties' agreements, and stay this Adversary Proceeding pending arbitration.

MOTION TO DISMISS AND
TO COMPEL ARBITRATION

SNELL & WILMER

L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

## II.

## STATEMENT OF FACTS[3]

**A.      The Debtors and Their Bankruptcy Cases.**

Plaintiffs were nonprofit public benefit corporations providing hospital and ancillary

medical services on an inpatient and outpatient basis.[4]  On August 31, 2018, Plaintiffs and each of

the other above-captioned debtors (each a "<u>Debtor</u>" and collectively the "<u>Debtors</u>") filed

voluntary chapter 11 bankruptcy petitions commencing the above-captioned cases.[5]  The

bankruptcy cases are jointly administered before the Court.[6] During the administration of these

bankruptcy cases, substantially all the assets of each Plaintiff were sold to their respective

purchasers pursuant to asset purchase agreements.[7] However, Plaintiffs allege that the assets sold

exclude the disputed accounts receivable set forth in the Complaint.[8] On August 14, 2020, the

Court entered an order confirming the Debtors' chapter 11 plan.[9]


**B.      Care 1st and the Agreements.**

BSC Promise is a managed care organization wholly-owned by Blue Shield of California

("<u>Blue Shield</u>").  BSC Promise offers Medi-Cal, Cal MediConnect, Medicare Advantage HMO

and Dual Eligible Special Needs Plans ("D-SNP").[10]  Blue Shield, in turn, is a nonprofit mutual

benefit corporation offering regulated health insurance plans in California.[11] BSC Promise pays

for health care services provided to its enrolled members under contractual agreements with

hospitals, physicians and other medical care providers.[12]  To that end, prior to rejection or

---

[3] Given the stage of the proceedings (i.e., the pleading stage), the following facts are assumed to be true for purposes of this Motion and are taken directly from Plaintiffs' Complaint.  In the event the Motion is denied, BSC Promise reserves its rights to contest any and all factual allegations contained in the Complaint.  Capitalized terms not otherwise defined herein shall have the meaning given to them in the Complaint.
[4] Complaint ¶¶ 5-8.
[5] *Id*. ¶ 10; Docket No. 1 in the main bankruptcy case.
[6] Docket No. 17 in the main bankruptcy case.
[7] Complaint ¶¶ 15-17.
[8] *Id*.
[9] Docket No. 5504 in the main bankruptcy case.
[10] *See* Complaint ¶¶ 21, 46, 71 and 96, Ex. A-1, A-2, C, E and G (Agreements, Recitals).
[11] *See* ¶ 9 of Plaintiffs' Complaint for Breach of Written Contracts, Turnover, Unjust Enrichment, and Damages for Violation of the Automatic Stay filed against Blue Shield on August 28, 2020, Case No. 2:20-ap-01575-ER.
[12] Complaint ¶¶ 21, 46, 71 and 96.

MOTION TO DISMISS AND
TO COMPEL ARBITRATION

1   assumption and assignment, as the case may be, BSC Promise was a party to the following

2   agreements with Plaintiffs: (1) the St. Vincent/Care 1st Agreements,[13] (2) the Seton/Care 1st

3   Agreement,[14] (3) the O'Connor/Care 1st Agreement,[15] and (4) the Saint Louise/Care 1st

4   Agreement[16] (the St. Vincent/Care 1st Agreements, Seton/Care 1st Agreement, O'Connor/Care

5   1st Agreement and the Saint Louise/Care 1st Agreement are each referred to as an "<u>Agreement</u>"

6   and collectively as the "<u>Agreements</u>"). Pursuant to the Agreements, each of which was effective

7   January 1, 2001 or January 1, 2013, as the case may be, Care 1st agreed to reimburse Plaintiffs

8   for covered medical services provided to Care 1st members at agreed upon rates.[17]

9        Pursuant to the Agreements, Plaintiffs were required to submit claims to Care 1st within

10  90 days of rendering services, or within the time frames mandated by applicable state or federal

11  law, and Care 1st was required to pay Plaintiffs for covered services in accordance with the

12  agreed upon compensation schedules and within the timeframes mandated by law.[18]  Plaintiffs

13  submitted hundreds of claims to Care 1st for medical services provided to Care 1st members.[19]

14  Care 1st processed the claims submitted by Plaintiffs, including denying those for non-covered

15  services or only paying for what is owed pursuant to the Agreements.[20]

16

17  **C.    The Arbitration Provisions.**

18       Each Plaintiff voluntarily entered into the respective Agreement, each of which contains a

19  detailed dispute resolution process.[21] In addition to providing for an informal meet and confer

20  process, a formal notice and remediation process,[22] the Agreements required any disputes to be

21  submitted to arbitration:

22

---

23  [13] Complaint ¶ 21, Ex. A-1, A-2.

24  [14] *Id*. ¶ 46, Ex. C.
    [15] *Id*. ¶ 71, Ex. E.

25  [16] *Id*. ¶ 96, Ex. G.
    [17] *Id*. ¶¶ 21, 46, 71 and 96.

26  [18] *Id*. ¶¶ 22, 47, 72 and 97.
    [19] *Id*. ¶¶ 23, 48, 73 and 98.

27  [20] *Id*. ¶¶ 24, 49, 74 and 99.
    [21] *Id*. ¶¶ 21, 46, 71 and 96, Ex. A-1, A-2, C, E and G (Agreements Part XII).

28  [22] *Id*. (Agreements § 12.1). The one exception to this is the St. Vincent/Care 1st Agreement effective January 1, 2001,
    which contains an informal meet and confer process, a voluntary mediation process, followed by a mandatory
    arbitration.  *Id*. ¶ 21, Ex. A-1 (Agreement § 12.1).

MOTION TO DISMISS AND
TO COMPEL ARBITRATION

1
2
3
4
5
6
7
8
9
10
11
12
13
14

Arbitration of Disputes. Any dispute, controversy, or disagreement arising out of or relating to this Agreement shall be settled exclusively by binding arbitration which shall be conducted in Los Angeles, California in accordance with the American Health Lawyers Association ("AHLA") Alternative Dispute Resolution Service Rules of Procedure for Arbitration, and which to the extent of the subject matter of the arbitration, shall be binding not only on the parties to the Agreement, but on any other entity controlled by, in control of, or under common control with the party to the extent that such affiliate joins in the arbitration, and judgment on the aware rendered by the arbitrator may be entered in any court having jurisdiction thereof. It is agreed that the arbitrator shall be bound by applicable state and federal laws and that the arbitrator shall issue written findings of fact and conclusions of law. The arbitrator shall have no authority to award damages or provide a remedy that would not be available to such prevailing party in a court of law. Nothing herein shall prohibit a party from seeking equitable or declaratory relief in a court of law to maintain the status quo while arbitration is pending hereunder. The prevailing party as determined by the arbitrator shall not be entitled to recover from the non-prevailing party any or all reasonable costs, fees and expenses of the arbitration, including its actual attorneys' fees. In no event shall either party initiate arbitration prior to the conclusion of the provider dispute resolution procedures set forth in Section 12.1 or after the date when the institution of legal or equitable proceedings based on such dispute would be barred by the applicable statute of limitations.[23]

15

**D.     Plaintiffs' Complaint.**

16

Plaintiffs contend that Care 1st breached the Agreements by failing to pay for covered

17

services or paying less than what Plaintiffs contend is owed under the Agreements.[24] To that end,

18

on August 28, 2020, Plaintiffs commenced the Adversary Proceeding, with each Plaintiff

19

asserting nearly identical claims against Care 1st for: (1) Breach of Contract (claims 1, 5, 9 and

20

13) (the "Breach of Contract Causes of Action");[25] (2) Turnover pursuant to Section 542 (claims

21

2, 6, 10 and 14) (the "Turnover Causes of Action");[26] (3) Unjust Enrichment (claims 3, 7, 11 and

22
23

[23] *Id*. ¶¶ 21, 46, 71 and 96, Ex. A-2, C, E and G (Agreements § 12.2). Again, the one exception to this is the St. Vincent/Care 1st Agreement effective January 1, 2001. That arbitration provides that "If any such dispute cannot be resolved, Hospital and Plan agree to submit such dispute to binding arbitration.

24
25
26

In the event arbitration between Plan and Hospital becomes necessary, such arbitration shall be initiated by either party making a written demand for arbitration on the other party. Such arbitration shall be conducted under the Commercial Rules of the American Arbitration Association using a mutually selected attorney arbitrator in Los Angeles, California.

*Id*. ¶ 21, Ex. A-1 (Agreement § 12.1).

27
28

[24] *Id*. ¶¶ 24, 49, 74 and 99.
[25] *Id*. ¶¶ 20-27, 45-52, 70-77, and 95-102.
[26] *Id*. ¶¶ 28-34, 53-59, 78-84, and 103-109.

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

MOTION TO DISMISS AND
TO COMPEL ARBITRATION

15) (the "<u>Unjust Enrichment Causes of Action</u>");[27] and (4) Violation of the Automatic Stay

pursuant to Section 362 (claims 4, 8, 12 and 16) (the "<u>Stay Violation Causes of Action</u>").[28]

Under their Breach of Contract Causes of Action, Plaintiffs allege that, after submitting

"hundreds" of claims to Care 1st for medical services provided to Care 1st members, Care 1st

breached the applicable Agreements by failing to pay or paying less than what Plaintiffs contend

is owed.[29]  Plaintiffs also contend that all disputed claims procedures have been performed or

satisfied,[30] presumably referring to the contractual dispute resolution process under the

Agreements.

This same allegation, the nonpayment or underpayment of the same medical claims for

services allegedly rendered, is the basis for all of Plaintiffs' causes of action.

Plaintiffs' quasi-contract Unjust Enrichment Causes of Action boil down to their assertion

that the same claims for services rendered, benefited Care 1st, and by failing to pay those claims,

Care 1st was unjustly enriched to Plaintiffs' detriment.[31]

Similarly, Plaintiffs' Turnover Causes of Action are that the amounts owed on the same

claims constitute property of each respective Debtor's estate and are therefore subject to turnover

under Section 542.[32] Plaintiffs contend that, despite their demand for payment and Care 1st's

denial thereof, the claims "are matured and not subject to bona fide dispute."[33]

Finally, Plaintiffs' Stay Violation Causes of Action are that the same claims constitute

property of each respective Debtor's estate and Care 1st's "knowing retention of estate property

violates the automatic stay and constitutes an act to exercise control over estate property."[34]

Plaintiffs' Turnover, Unjust Enrichment, and Stay Violation Causes of Action should be

dismissed for failure to state a claim.  Plaintiffs' Breach of Contract Causes of Action are subject

[27] *Id*. ¶¶ 35-39, 60-64, 85-89, and 110-114.
[28] *Id*. ¶¶ 40-44, 65-69, 90-94, and 115-119.
[29] *Id*. ¶¶ 23-24, 48-49, 73-74 and 98-99.
[30] *Id*. ¶¶ 25, 50, 75 and 100.
[31] *Id*. ¶¶ 35-38, 60-63, 85-88, and 110-113.
[32] *Id*. ¶¶ 29, 54, 79, and 104.
[33] *Id*.
[34] *Id*. ¶¶ 42, 67, 92 and 117.

MOTION TO DISMISS AND
TO COMPEL ARBITRATION

1  to valid and binding arbitration provisions, such that the Court should compel arbitration of those

2  claims and dismiss or stay this Adversary Proceeding.

3

4  ### III.

5  ### THE CLAIMS FOR TURNOVER, VIOLATION OF THE AUTOMATIC STAY AND

6  ### UNJUST ENRICHMENT MUST BE DISMISSED

7  **A.    Legal Standard for Dismissal.**

8      A complaint must be dismissed when it fails to state a claim upon which relief can be

9  granted.  FRCP 12(b)(6).  A Rule 12(b)(6) motion is proper when the complaint fails to allege

10  either a cognizable legal theory or absence of sufficient facts alleged under a cognizable legal

11  theory.  *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010).

12  To survive a motion to dismiss, the pleading must allege "enough facts to state a claim to relief

13  that is *plausible* on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)

14  (emphasis added); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Although the plaintiff's

15  factual allegations need not be detailed, they must offer more than "labels and conclusions" or a

16  "formulaic recitation of the elements of [the] cause of action."  *Twombly*, 550 U.S. at 555.  These

17  facts must "be enough to raise a right to relief above the *speculative* level."  *Id.* (emphasis added).

18      In determining whether a complaint adequately states a plausible claim for relief, the court

19  should take "note of the elements a plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675.

20  Once noted, the court should perform a two-pronged analysis: First, identify and disregard the

21  allegations in the complaint that constitute legal conclusions, as mere "labels and conclusions" or

22  "formulaic recitation[s] of the elements of a cause of action" will not overcome a motion to

23  dismiss. *Id.* 678-80. Then, evaluate whether the non-conclusory factual allegations support a

24  plausible entitlement to relief. *Id.* at 681. The complaint must state a claim that is "plausible on its

25  face." *Id.* at 678.

26      "A claim has facial plausibility when the plaintiff pleads factual content that allows the

27  court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The

28  plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

MOTION TO DISMISS AND
TO COMPEL ARBITRATION

1    possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely

2    consistent with' a defendant's liability, it 'stops short of the line between possibility and

3    plausibility of entitlement to relief." *Id.*

4        When "however true," the allegations in a complaint "could not raise a claim of

5    entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure

6    of time and money by the parties and the court." *See Twombly*, 550 U.S. at 558; *see also Iqbal*,

7    556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a

8    complaint is inapplicable to legal conclusions."). "[A] court considering a motion to dismiss can

9    choose to begin by identifying pleadings that, because they are no more than conclusions, are not

10   entitled to the assumption of truth." *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th

11   Cir. 2009).

12       In deciding a motion to dismiss, a court may consider "documents attached to the

13   complaint, documents incorporated by reference in the complaint, or matters of judicial notice...."

14   *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Dismissal without leave to amend

15   is appropriate where amendment would be futile. *See, e.g., In re Tracht Gut, LLC*, 503 B.R. 804,

16   815 (9th Cir. BAP 2017).

17       Here, Plaintiffs fail to state a plausible claim for relief as to the Turnover, Stay Violation

18   and Unjust Enrichment Causes of Action. As such, these claims should be dismissed and, because

19   amendment would be futile, the Court should not grant Plaintiffs leave to amend.

20

21   **B.     Plaintiffs Fail to State a Plausible Claim for Turnover under Section 542.**

22       Section 542 enables the recovery of property for the estate's benefit, which includes

23   property in possession of noncustodial third parties at the time the bankruptcy case is

24   commenced. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 207 (1983).  Property subject to

25   a turnover action is limited to identifiable estate property and money due to the debtor without

26   dispute; the turnover provision cannot be used to create or expand the debtor's interest in property

27   beyond what existed on the petition date.  *In re Graves*, 609 F.3d 1153, 1157-58 (10th Cir. 2010).

28   To this end, turnover is only a remedy to obtain what is acknowledged to be property of the estate

MOTION TO DISMISS AND
TO COMPEL ARBITRATION

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

— it is not intended as a remedy to determine *disputed* rights to property.  *In re Lauria*, 243 B.R. 705, 708 (Bankr. N.D. Ill. 2000); *In re Hechinger Investment Co. of Delaware, Inc.*, 282 BR 149, 161–162 (Bankr. D. Del. 2002).

Importantly, "turnover proceedings are not to be used to liquidate disputed contract claims."  *In re Charter Co.*, 913 F.2d 1575, 1579 (11th Cir. 1990) ("Clearly, Congress envisioned the turnover provision of § 542 ... to apply to tangible property and money due to the debtor without dispute which are fully matured and payable on demand."); *see also In re Falzerano*, 686 F.3d 885, 887 (8th Cir. 2012); *In re Gurga*, 176 B.R. 196, 199 (9th Cir. BAP 1994) ("[T]urnover proceedings involve return of ***undisputed*** funds.") (emphasis added).

Here, Plaintiffs cannot state a plausible turnover claim under Section 542 because the property sought to be recovered – payment on claims for medical services – is disputed.

A complaint must be dismissed unless the non-conclusory, well-pleaded factual allegations establish a claim that is plausible on its face. *Iqbal*, 556 U.S. at 678-81. The factual allegations must establish that a claim is not speculative and is "more than a sheer possibility...." *Id*. at 678. Plaintiffs' allegation that the subject claims "constitute property of [Plaintiffs'] estate[s]"[35] is conclusory and falls far short of the necessary pleading requirements.  Under the first prong of the Supreme Court's two-pronged test set forth in *Iqbal* and *Twombly*, this threadbare recital is insufficient to be entitled to an assumption of truth and should be disregarded for purposes of determining whether the claim is plausible.

Indeed, the blanket statements by Plaintiffs that the medical claims at issue are "matured and not subject to bona fide dispute"[36] are equally conclusory and belied by other allegations in the Complaint. Plaintiffs allege that they "timely submitted hundreds of claims to Care 1st",[37] and Care 1st "fail[ed] and refus[ed]"[38] to pay those claims or paid "less than what is owed pursuant to the terms of the"[39] Agreements. In other words, Care 1st and Plaintiffs dispute the payment amounts owed on those claims.

---

[35] Complaint ¶¶ 29, 54, 79 and 104.
[36] *Id*.
[37] *Id*. ¶ 23; *see also id.* ¶¶ 48, 73 and 98 (Plaintiffs "timely submitted claims to Care 1st....").
[38] *Id*. ¶¶ 24, 49, 74 and 99.
[39] *Id*.

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1    Plaintiffs also contend that "all disputed claim procedures have been substantially or

2    wholly performed[.]"[40] If true, this means that Plaintiffs allege they complied with the multi-

3    faceted dispute resolution process, the claims at issue were denied by Care 1st, after reviewing all

4    of the evidence submitted by Plaintiffs.  It defies credulity that such claims can somehow *not* be

5    subject to bona fide dispute.  Clearly, in bringing this Complaint, Plaintiffs ignored the critical

6    limitation applicable to turnover proceedings under Section 542 – that such proceedings are only

7    appropriate for property that is *indisputably property of the estate*.  Here, the disputed medical

8    claims remain just that – disputed – and are not subject to turnover under Section 542.

9    Accordingly, the Court must dismiss Plaintiffs' Turnover Causes of Action under FRBP

10    7012 for failure to state an actionable claim. And because amendment would be futile, the Court

11    should not allow Plaintiffs leave to amend.

12

13    **C.    Plaintiffs Fail to State a Plausible Claim for Violation of the Automatic Stay.**

14    The automatic stay arises by operation of law upon the filing of a bankruptcy petition.  11

15    U.S.C. § 362(a).  To that end, any act to obtain possession of property of the estate or of property

16    from the estate, or to exercise control over property of the estate, is prohibited by the automatic

17    stay.  *See* 11 U.S.C. § 362(a)(3).  The stay of an act against estate property "continues until such

18    property is no longer property of the estate."  11 U.S.C. § 362(c)(1).

19    Although contractual rights may constitute property of the estate, the law is clear that

20    withholding payment on an unliquidated or disputed contract claim is not a stay violation.  *See In*

21    *re West Coast Video Enterprises, Inc.*, 145 B.R. 484, 487 (Bankr. E.D. Pa. 1992) ("There is an

22    attempt to characterize the Defendants' actions as violations of the automatic stay.  We reject this

23    ... as we do not believe that the Defendants' actions, which boil down to an assertion of rights

24    contrary to those claimed by the Debtor, are violative of 11 U.S.C. § 362(a).").  This is because, to

25    be actionable, the retention of property must be both affirmative and with knowledge.[41] *See In re*

26    *Welded Construction, L.P.*, 609 B.R. 101, 127-28 (Bankr. D. Del. 2019) (holding that "[f]ailure to

27
──────────────
28    [40] *Id*. ¶¶ 25, 50, 75 and 100.
     [41] *Id*. ¶¶ 42, 67, 92 and 117.

MOTION TO DISMISS AND
                                          TO COMPEL ARBITRATION

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1   pay a disputed contract debt is merely a passive act that, even if taken post-petition, does not

2   satisfy the affirmative act requirement necessary for an automatic stay violation finding under

3   Section 362(a)(3)."); *see also* 11 U.S.C. § 362(a)(3) (requiring "knowing retention of estate

4   property"); *In re Del Mission Ltd.*, 98 F.3d 1147, 1151 (9th Cir. 1996) (finding stay violation

5   where state refused to comply with court order to turnover specified funds to trustee).

6          Here, Plaintiffs' Stay Violation Causes of Action fail to meet either requirement.  Simply

7   failing to surrender to the Plaintiffs' unreasonable demands for payment is not an affirmative act

8   and therefore cannot violate the automatic stay. *In re Welded Construction, L.P.*, *supra*.

9   Moreover, any alleged retention cannot be "knowing" under Section 362(a)(3) because as

10  discussed above, Plaintiffs' own Complaint demonstrates that the parties dispute the amounts

11  allegedly owed and those amounts have not been liquidated or finally determined.  As any alleged

12  failure to pay disputed amounts cannot constitute a stay violation under Section 362(a)(3), the

13  Court must dismiss Plaintiffs' Stay Violation Causes of Action for failure to state a claim.  FRBP

14  7012.  Because amendment would be futile, the dismissal should be with prejudice.

15

16  **D.**     **Plaintiffs Fail to State a Plausible Claim for Unjust Enrichment.**

17         Plaintiffs' Unjust Enrichment Causes of Action fail for three fundamental reasons: (1)

18  there is in fact no cause of action for unjust enrichment under California law, (2) a quasi-contract

19  action alleging unjust enrichment fails where there is an express contract covering the same

20  subject matter, and (3) Care 1st did not in fact receive a benefit.

21

22         1.     California Law Does Not Recognize a Cause of Action for Unjust Enrichment.

23         An individual may be required to make restitution if he or she is unjustly enriched at the

24  expense of another.  *Ghirardo v. Antonioli*, 14 Cal. 4th 39, 51 (1996). "A person is enriched if he

25  or she has received a benefit." *California Fed. Bank v. Matreyek*, 8 Cal. App. 4th 125, 131

26  (1992). "The *recipient* of the benefit is liable only if the circumstances are such that, as between

27  the *two* persons, it is unjust for the recipient to retain it."  *Id*. (emphasis added).  There is,

28  however, no independent cause of action in California for unjust enrichment. *Levine v. Blue*

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

- 18 -

MOTION TO DISMISS AND
TO COMPEL ARBITRATION

*Shield of California*, 189 Cal. App. 4th 1117, 1138 (2010) ("There is no cause of action in California for unjust enrichment. Unjust enrichment is synonymous with restitution. Thus, [plaintiffs] unjust enrichment claim does not properly state a cause of action ... [and] the trial court properly sustained Blue Shield's demurrer to the [plaintiffs] unjust enrichment claim.") (citations omitted).  For this reason alone, Plaintiffs' Unjust Enrichment Causes of Action fail as a matter of law and should be dismissed.

       2.      <u>Unjust Enrichment Claims Fail Where There Is an Express Agreement</u>.

      "[A]s a matter of law, a quasi-contract action for unjust enrichment does not lie where, as here, express binding agreements exist and define the parties' rights." *California Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, 94 Cal. App. 4th 151, 172 (2001); *see also Lance Camper Manuf. Corp. v. Republic Indemn. Co.*, 44 Cal. App. 4th 194, 203 (1996) ("[I]t is well settled that an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter."); *Hedging Concepts, Inc. v. First Alliance Mortg. Co.*, 41 Cal. App. 4th 1410, 1419 (1996) ("[Q]uasi-contractual recovery rests upon the equitable theory that a contract to pay for services rendered is implied by law for reasons of justice. However, it is well settled that there is no equitable basis for an implied-in-law promise to pay reasonable value when the parties have an actual agreement covering compensation.") (citations omitted). Nor can a plaintiff plead unjust enrichment in the alternative to breach of contract if there is an enforceable agreement regarding the particular subject matter. *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1388 (2012).

      Plaintiffs' Unjust Enrichment Causes of Action are plainly negated by their Breach of Contract Causes of Action and the Agreements.  The facts here parallel those in *California Med. Ass'n, Inc. v. Aetna U.S. Healthcare of Cal., Inc.*, where the court rejected providers' attempts to hold a health benefit plan liable under an unjust enrichment theory when the providers had an express contract with that health plan. *Id.*, 94 Cal. App. 4th at 172. Indeed, Plaintiffs allege that they "provided the services with the understanding that it would be paid by Care 1st for the

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1  services provided."[42] Plaintiffs' Unjust Enrichment Causes of Action are expressly based on the

2  Agreements, in that Plaintiffs seek recovery of the exact same disputed provider claims in their

3  Contract and Unjust Enrichment Causes of Action.[43]  It is thus the Agreements that define the

4  rights of the parties – not some quasi-contract implied at law.

5

6        3.     <u>Care 1st Did Not Receive any Benefit and Therefore Was Not Unjustly Enriched</u>.

7        In order to recover under an unjust enrichment theory against Care 1st, Plaintiffs must

8  allege that Care 1st received a benefit.  *Matreyek*, 8 Cal. App. 4th at 131. Here however, Plaintiffs

9  allege that they provided "health care services to Care 1st members."[44] While Plaintiffs allege that

10  Care 1st "obtained the benefit of [such] services,"[45] they fail to allege how Care 1st received a

11  benefit or what benefit Care 1st received.  Because any "benefits" alleged by Plaintiff were

12  provided to Care 1st *members* and not to Care 1st, Plaintiffs have not alleged any unjust

13  enrichment claim against Care 1st.

14        Plaintiffs' Unjust Enrichment Causes of Action should be dismissed for failure to state a

15  claim for relief.  FRBP 7012.  And because amendment would be futile, the dismissal should be

16  with prejudice.

17

18  **IV.**

19  **ARBITRATION SHOULD BE COMPELLED FOR THE BREACH OF CONTRACT**

20  **CAUSES OF ACTION AND THIS ADVERSARY PROCEEDING**

21  **SHOULD BE DISMISSED OR STAYED**

22  **A.    Longstanding and Binding Precedent Favors Enforcing Arbitration Agreements.**

23        More than three decades of Supreme Court precedent supports a "'liberal federal policy

24  favoring arbitration agreements'" under the Federal Arbitration Act ("<u>FAA</u>"). *Ziober v. BLB Res.*,

25

26  [42] *Id*. ¶¶ 37, 62, 87 and 112.

[43] *See, e.g.*, ¶¶ 24, 27, and 37-39 of the Complaint, and Exhibit B, showing that the St. Vincent disputed provider

27  claims are the exact same claims for all four of St. Vincent's causes of action.  *See also*, ¶¶ 20-27 of the Complaint,
demonstrating Plaintiffs' expectation of payment derives from their submission of claims to Care 1st pursuant to the
Agreement (which Plaintiffs incorporate by reference into the Unjust Enrichment Causes of Action (¶¶ 35-39)).

28  [44] Complaint ¶¶ 36, 61, 86 and 111.

[45] *Id*. ¶¶ 38, 63, 88 and 113.

MOTION TO DISMISS AND
TO COMPEL ARBITRATION

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1    *Inc.*, 839 F.3d 814, 816 (9th Cir. 2016), cert. denied, 137 S.Ct. 2274 (2017) (citing *Moses H.*

2    *Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). "Because arbitration is

3    fundamentally a matter of contract, 'the central or 'primary' purpose of the FAA [Federal

4    Arbitration Act] is to ensure that 'private agreements to arbitrate are enforced according to their

5    terms.''" *Momot v. Mastro*, 652 F.3d 982, 986 (9th Cir. 2011) (citations omitted); 9 U.S.C.

6    §§ 2-4. "The FAA also provides for stays of proceedings in federal district courts when an issue

7    in the proceeding is referable to arbitration, § 3, and for orders compelling arbitration when one

8    party has failed, neglected, or refused to comply with an arbitration agreement, § 4." *Gilmer v.*

9    *Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991). The strong federal policy in favor of

10    arbitration requires that courts enforce arbitration agreements according to their terms whenever

11    possible.  *See Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985). Under the FAA, the

12    role of the trial court is "limited to determining (1) whether a valid agreement to arbitrate exists

13    and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v.*

14    *Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citations omitted); 9 U.S.C. § 4.

15

16    **B.    Arbitration Agreements Must Be Enforced In Bankruptcy For *Non*-Core Matters;**

17    **They Must Also Be Enforced For Core Matters Where Doing So Does Not Conflict**

18    **With Bankruptcy Law.**

19         The FAA applies even when federal statutory claims are at issue, including claims under

20    the Bankruptcy Code, unless the FAA's mandate has been "overridden by a contrary

21    congressional command."  *See Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226

22    (1987); *see also Continental Ins. Co. v. Thorpe Insulation Co., (In re Thorpe Insulation Co.)*, 671

23    F.3d 1011, 1020-21 (9th Cir. 2012).  In the bankruptcy context, it is already well-settled law that

24    "[n]either the text nor the legislative history of the Bankruptcy Code reflects a congressional

25    intent to preclude arbitration in the bankruptcy setting."  *Id.* (citing *Whiting-Turner Contracting*

26    *Co. v. Elec. Mach. Enters., Inc. (In re Elec. Mach. Enters., Inc.)*, 479 F.3d 791, 796 (11th Cir.

27    2007); *In re Mintze*, 434 F.3d 222, 231 (3rd Cir. 2006); *Mor-Ben Ins. Mkts. Corp. v. Trident Gen.*

28    *Ins. Co. (In re Mor-Ben Ins. Mkts. Corp.)*, 73 B.R. 644, 648 (9th Cir. BAP 1987)).  The relevant

MOTION TO DISMISS AND
TO COMPEL ARBITRATION

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1    inquiry then becomes "whether there is an inherent conflict between arbitration and the

2    underlying purposes of the Bankruptcy Code." *Thorpe*, 671 F.3d at 1020.

3         The Ninth Circuit test for "inherent conflict" turns on whether the matter is a "core" or

4    "non-core" proceeding, where "non-core" matters are definitively referred to arbitration. *Id.* at

5    1021 ("In non-core proceedings, the bankruptcy court generally does not have discretion to deny

6    enforcement of a valid prepetition arbitration agreement.").  On the other hand, "[i]n core

7    proceedings, by contrast, the bankruptcy court, at least when it sees a conflict with bankruptcy

8    law, has discretion to deny enforcement of an arbitration agreement."  *Id.* (citing *Phillips v.*

9    *Congelton, L.L.C. (In re White Mountain Mining Co.)*, 403 F.3d 164, 169 (4th Cir. 2005). "The

10   rationale for the core/non-core distinction ... is that non-core proceedings 'are unlikely to present

11   a conflict sufficient to override by implication the presumption in favor of arbitration,' whereas

12   core proceedings 'implicate more pressing bankruptcy concerns.'" *Thorpe*, 671 F.3d at 1021

13   (citing *In re U.S. Lines*, 197 F.3d 631, 640 (2nd Cir. 1999)).

14        However, even in core proceedings, an applicable arbitration provision still must be

15   enforced *unless* "arbitration would conflict with the underlying purposes of the Bankruptcy

16   Code." *Thorpe*, 671 F.3d at 1021 (emphasis added) (citing *McMahon*, 482 U.S. at 227; *In re*

17   *Elec. Mach. Enters.*, 479 F.3d at 796, *In re Mintze*, 434 F.3d 222, 231 (3rd Cir. 2006); *In re White*

18   *Mountain Mining*, 403 F.3d at 169-70; *In re U.S. Lines*, 197 F.3d 631, 640 (2nd Cir. 1999); *In re*

19   *National Gypsum Co.*, 118 F.3d 1056, 1069-70 (5th Cir. 1997)). In other words, "the core/non-

20   core distinction, though relevant, is not alone dispositive" in deciding whether a core claim

21   should be submitted to arbitration.  There must be a finding of some conflict with bankruptcy law,

22   and even then, the decision to compel arbitration is still subject to the bankruptcy court's sound

23   discretion. *Thorpe*, 671 F.3d at 1021.

24        Here, Plaintiffs' Breach of Contract Causes of Action are not core proceedings, and are

25   therefore subject to valid and enforceable arbitration provisions.

26

27

28

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

MOTION TO DISMISS AND
TO COMPEL ARBITRATION

**C.    Plaintiffs' Arbitrable Claims are Not Core Proceedings.**

Plaintiffs would misclassify the Adversary Proceeding as a core proceeding in a thinly-veiled effort to vitiate the arbitration provisions in the applicable Agreements (the "Arbitration Provisions") and to invoke this court's jurisdiction. Core proceedings are those matters and causes of action that "arise under" or "arise in" a case under Title 11.  28 U.S.C. § 157(b).  Core proceedings generally involve causes of action created or determined by the Bankruptcy Code or administrative matters arising only in bankruptcy cases.  *See id.*; *see also, In re Harris Pine Mills*, 44 F.3d 1431, 1435-36 (9th Cir. 1995). If the proceeding does not involve a substantive right created by the Bankruptcy Code and is one that could exist outside of bankruptcy, it is *not* a core proceeding.  *Id*. at 1435 ("[I]t may be *related* to the bankruptcy because of its potential effect, but ... it is an otherwise related or non-core proceeding.") (emphasis in original, citations omitted). This proceeding involves a contract dispute between a hospital and a health plan regarding whether certain health care services were covered benefits under a variety of health plans and whether the amount paid on any covered claims was consistent with the Agreements – rights that arise under contract, and disputes that routinely proceed outside of bankruptcy and in arbitrations.

Courts in this Circuit and across the country have consistently held that breach of contract actions are not core proceedings.  *See, e.g., In re Gurga*, 176 B.R. 196, 199 (9th Cir. BAP 1994) ("Breach of contract actions are noncore claims."). *Gurga* exemplifies Plaintiffs' attempt to disguise breach of contract claims as core proceedings:

> Despite [debtor's] attempts to frame the issues herein as core, we find that the claims are noncore. It is undisputed that the underlying action is a breach of contract action. The adversary proceeding ... entitled 'Complaint for turnover of property, accounting, breach of contract, conversion, and breach of fiduciary duty,' includes claims for relief for only one potential core issue— turnover of property pursuant to 11 U.S.C. § 542(b). However, turnover proceedings involve return of *undisputed* funds.  Here, the amounts, if any, owed to [debtor] by [creditor] are in dispute and this dispute rests on breach of contract issues." *Id*. (emphasis in original).

Here, just as in *Gurga*, Plaintiffs' Breach of Contract Causes of Action could certainly exist outside of bankruptcy.  They are based on the Agreements entered into almost a decade ago,

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1   pursuant to which the parties have a long and detailed course of dealing. Indeed, the Agreements

2   themselves expressly contemplate such disputes existing outside of bankruptcy by providing for a

3   dispute resolution process and arbitration.[46] Plaintiffs' attempt to transmute the Breach of

4   Contract Causes of Action into a core proceeding by also asserting Turnover and Stay Violation

5   Causes of Action is meritless.  As set forth above, the amounts owed to Plaintiffs by BSC

6   Promise under the Agreements, if any, are in dispute – and this dispute rests on whether Care 1st

7   breached the Agreements.

8          While a claim for turnover or violation of the automatic stay would be considered a core

9   proceeding, a disputed contract claim is not. *Gurga*, 176 B.R. at 199; *see also In re Castlerock*

10  *Properties*, 781 F.2d 159, 161-62 (9th Cir. 1986) (collecting cases).  However, BSC Promise only

11  seeks to compel arbitration of the Breach of Contract Causes of Action (and not the Turnover or

12  Stay Violation Causes of Action, which should be dismissed with prejudice for the reasons

13  discussed above).

14

15  **D.      The Arbitration Provisions are Enforceable.**

16         Contracts to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as

17  exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2; *see also Kuehner v.*

18  *Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996).  "By its terms, the [FAA] leaves no place for

19  the exercise of discretion by a district court, but instead mandates that district courts shall direct

20  the parties to proceed to arbitration on issues as to which an arbitration agreement has been

21  signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *see also Republic of*

22  *Nicar. v. Std. Fruit Co.*, 937 F.2d 469, 475 (9th Cir. 1991) ("The standard for demonstrating

23  arbitrability is not a high one; in fact, a district court has little discretion to deny an arbitration

24  motion, since the [FAA] is phrased in mandatory terms.").  The court's role under the FAA is

25  "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2)

26

27  ────────────────

28  [46] Notably, these hospital Plaintiffs and/or their affiliated debtor hospitals have previously filed demands for arbitration under similar agreements, including in 2016, for alleged underpayment or non-payment for medical services rendered to Care 1st members. *See, e.g.,* Request for Judicial Notice, Ex. 1.

MOTION TO DISMISS AND
TO COMPEL ARBITRATION

1    whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys.,*

2    *Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000) (citations omitted); 9 U.S.C. § 4.

3

4        1.    The Arbitration Provisions Are Valid.

5        The FAA applies to any "written arbitration provision in 'a contract evidencing a

6    transaction involving commerce.'" *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S.

7    265, 268 (1995) (citing 9 U.S.C. § 2). This phrase is read 'broadly,' extending the FAA's reach

8    "to the limits of Congress' Commerce Clause power." *Id.* A narrow interpretation would not be

9    consistent with the FAA's purpose.  *Id.*  Consistent with this broad approach, a contract

10   containing an arbitration provision need only be related to "commerce" to fall within the coverage

11   of the Act.  *See Trans Chemical Ltd. v. China Nat. Mach. Import and Export Corp.*, 161 F.3d

12   314, 319 (5th Cir. 1998).  "Congress' Commerce Clause power 'may be exercised in individual

13   cases without showing any specific effect upon interstate commerce if in the aggregate the

14   economic activity in question would represent 'a general practice . . . subject to federal control.'"

15   *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57 (2003). Even an arbitration provision in a

16   termite inspection contract performed entirely within a state was governed by the FAA because

17   materials and supplies were purchased out of state.  *Allied-Bruce Terminix Companies, Inc.,*

18   *supra*, 513 U.S. at 273-78.

19       It is undisputed that the Agreements involve commerce.  The Agreements concern Care

20   1st members, regardless of where they reside, including those that receive Medicare benefits

21   under Title 42 of the Code of Federal Regulations.  In addition, the aggregate economic activity

22   of healthcare is a general practice subject to federal control, and in fact is subject to extensive

23   federal control and regulation.  *See, e.g.,* 42 C.F.R. 1395 *et seq.*; *see also, e.g., Toledo v. Kaiser*

24   *Permanente Med. Group*, 987 F. Supp. 1174, 1180 (N.D. Cal. 1997) (health plan membership

25   agreement "evidences a number of links to interstate commerce sufficient to invoke the

26   application of the FAA.").

27

28

MOTION TO DISMISS AND
TO COMPEL ARBITRATION

In addition, even with the inclusion of a general California choice-of-law provision,[47] the FAA still governs because there is not a "clear and unmistakable" intent expressed that the FAA should not be applied. *Villarreal v. Perfection Pet Foods, LLC*, No. 116CV01661LJOEPG, 2017 WL 1353802, at *2 (E.D. Cal. Apr. 10, 2017); *see Wolsey, Ltd. v. Foodmaker, Inc.*, 144 F.3d 1205, 1210, 1213 (9th Cir. 1998); *Sovak v. Chugai Pharm. Co.*, 280 F.3d 1266, 1270 (9th Cir. 2002).

Moreover, by executing the Agreements, Plaintiffs knowingly entered into agreements containing an explicit dispute resolution process, which includes binding arbitration. Where a party signs an agreement, its acceptance of the agreement is express. *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012). Each Plaintiff here agreed to the Arbitration Provisions when it entered into the Agreements.[48] There is no doubt that Plaintiffs agreed to arbitrate by virtue of their execution of the Agreements, and in fact, availed themselves of those same provisions by previously seeking arbitration against Care 1st.[49]

2.      The Arbitration Provisions Encompass the Breach of Contract Claims.

There can be little doubt Plaintiffs' claims fall within the scope of the Arbitration Provisions. When determining the scope of an arbitration provision, a court must look to the factual allegations of the complaint and determine whether the claims alleged therein touch and concern matters covered by the arbitration provisions. *See Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987); *In re Tirex Int'l, Inc.*, 395 B.R. 182, 194 (Bankr. S.D. Fla. 2008). Additionally, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Volt Info. Sci., Inc. v. Bd. of Trustees of Leland Stanford Jr. Univ.*, 489 U.S. 468, 476 (1989). The presumption of arbitrability, created by the mere existence of an arbitration clause, can be overcome only if "it may be said with positive assurance that the arbitration clause is not

---

[47] *Id*. ¶ 21, Ex. A-1 (Agreement § 14.11); ¶¶ 21, 46, 71 and 96, Ex. A-2, C, E and G (Agreements § 14.10).
[48] Complaint ¶¶ 21, 46, 71 and 96, Ex. A-1, A-2, C, E, and G.
[49] As noted above in footnote 46, Plaintiffs' affiliated debtor hospitals have previously made similar claims against Care 1st by way of arbitration demands under similar agreements. *See, e.g.*, Request for Judicial Notice, Ex. 1.

MOTION TO DISMISS AND
TO COMPEL ARBITRATION

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage." *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986) (citations omitted).

Here, Plaintiffs' Breach of Contract Causes of Action are premised upon the Agreements themselves. *See, e.g., Aspire Home Healthcare, Inc. v. Therastaff, LLC*, No. 13CV2917-MMA (JLB), 2014 WL 12539917 (S.D. Cal. June 9, 2014) (dispute for payment related to the parties' agreement).  The Breach of Contract Causes of Action involve medical claims that Plaintiffs submitted to, and sought payment from, Care 1st under the Agreements.  The Arbitration Provisions specifically provide that they apply to any dispute arising out of or relating to the Agreements that are not otherwise resolved through the dispute resolution process. It cannot be credibly denied that the Breach of Contract Causes of Action fall within the scope of the Arbitration Provisions.

**E.    The Adversary Proceeding Should be Dismissed or Stayed Pending Arbitration.**

The Court should compel arbitration and "stay the action or dismiss it outright when, as here, the court determines that all of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014); 9 U.S.C. §§ 3, 4. *See also Target Corporation v. Wolters Kluwer Health, Inc*., No. CV 15-6350-AB (FFMx) 2015 WL 12646483, at *1 (C.D.Cal. Dec. 16, 2015) (dismissing action for failure to mediate).  Here, the Court should dismiss the Turnover, Stay Violation and the Unjust Enrichment Causes of Action with prejudice, as set forth above. The only viable claims remaining are the arbitrable ones; i.e., the Breach of Contract Causes of Action.  The Court should send the Breach of Contract Causes of Action to arbitration and dismiss or stay this Adversary Proceeding as to them.  If the arbitration proceedings result in an award in favor of Plaintiffs, Plaintiffs can then seek confirmation of their award in this Court.

MOTION TO DISMISS AND
TO COMPEL ARBITRATION

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SNELL & WILMER
L.L.P.
LAW OFFICES
600 ANTON BLVD, SUITE 1400
COSTA MESA, CALIFORNIA 92626-7689

## V.

## <u>CONCLUSION</u>

Based on the foregoing, BSC Promise respectfully requests that the Court dismiss Plaintiffs' Turnover, Stay Violation and Unjust Enrichment Causes of Action.  Moreover, because amendment would be futile, BSC Promise requests that leave to amend not be granted.  In addition, BSC Promise respectfully requests that the Court enter an order compelling arbitration of Plaintiffs' Breach of Contract Causes of Action in conformance with the Agreements, and otherwise dismiss or stay this Adversary Proceeding pending arbitration.  Finally, BSC Promise requests such other and additional relief as the Court deems just and proper.

Dated: October 30, 2020

Respectfully submitted,

SNELL & WILMER L.L.P.

By:  _/s/ Michael B. Reynolds_
Michael B. Reynolds
Andrew B. Still
Attorneys for Defendant Blue Shield of California Promise Health Plan f/k/a Care 1st Health Plan

4833-2121-3648.4

MOTION TO DISMISS AND
TO COMPEL ARBITRATION

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
600 Anton Boulevard, Suite 1400, Costa Mesa, CA  92626-7689.

A true and correct copy of the foregoing document entitled (*specify*): **Blue Shield of California Promise Health Plan's Notice of Motion and Motion to: (1) Dismiss Claims for Turnover, Violation of the Automatic Stay and Unjust Enrichment; and (2) Compel Arbitration and Stay Adversary Proceeding; Memorandum of Points and Authorities**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) October 30, 2020, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Steven J Kahn    skahn@pszyjw.com
- Michael B Reynolds    mreynolds@swlaw.com, kcollins@swlaw.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) October 30, 2020, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**Via Federal Express**:

The Honorable Ernest M. Robles
United States Bankruptcy Court
255 E. Temple Street, Suite 1560/Crtrm 1568
Los Angeles, California  90012

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 30, 2020 | Kelley Nestuk | /s/ Kelley Nestuk |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**